UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RODERICO FILADELFO PEREZ-PEREZ, <br><br> Petitioner, <br><br> v. <br><br> KEVIN RAYCRAFT et al., <br> Respondents. | Case No. 26-10533 <br> Honorable Shalina D. Kumar <br> Magistrate Judge Elizabeth A. Stafford |

**AMENDED OPINION AND ORDER GRANTING PLAINTIFF'S
EMERGENCY MOTION FOR IMMEDIATE RELEASE
(ECF NO. 2)**

## I.    Introduction

Petitioner Roderico Filadelfo Perez-Perez ("Perez-Perez" or

"Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2241, alleging that he is being unlawfully detained by the Respondents at

the Monroe County Jail without any statutory authority and in violation of

the Due Process clause of the Fifth Amendment. *See generally*, ECF Nos.

1, 3 . Perez-Perez also filed the emergency motion for immediate relief,

which has been fully briefed. ECF Nos. 2, 8, 9. The Court is satisfied that

Page **1** of **25**

the issues have been adequately briefed thereby making a hearing unnecessary. *See* E.D. Mich. L.R. 7.1(f)(2).

## II.    Factual and Procedural Background

Perez-Perez, a native of Guatemala, entered the United States without inspection in 1994. *Perez v. Bondi*, 160 F.4th 710, 712 (6th Cir. 2025). He lived in Detroit until 2019, when he was taken into custody by U.S. Immigration and Customs Enforcement ("ICE") and detained at the Monroe County Jail. *Id*. at 712-13.

Perez-Perez conceded his removability during his first removal hearing but indicated that he would seek cancellation of his removal under 8 U.S.C. § 1229b(b)(1)(D), naming his youngest daughter as his qualifying relative.[1] *Id*. at 713. Immigration Judge ("IJ") Gorland granted Perez-Perez

---

[1] Deportation of an otherwise deportable noncitizen may be cancelled if that noncitizen establishes four preconditions to relief. *Singh v. Rosen*, 984 F.3d 1142, 1147 (6th Cir. 2021); *see also* 8 U.S.C. § 1229b(b)(1). The four preconditions to relief are met if the noncitizen demonstrates: (1) continuous physical presence for a minimum of 10 years prior to the cancellation application; (2) he has been a person of "good moral character" during that period; (3) he has no convictions of a disqualifying offense; and (4) he has established that "removal would result in exceptional and extremely unusual hardship to the [noncitizen's] spouse, parent, or child" who is a U.S. citizen or lawfully admitted permanent resident. 8 U.S.C. §§ 1229b(b)(1)(A)-(D). The INA defines "child" as "an unmarried person under twenty-one years of age[.]" *Id*. § 1101(b)(1).

cancellation of his removal in April 2020. *Id*. The Department of Homeland Security ("DHS") immediately appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). Before the IJ cancelled the removal, Perez-Perez petitioned for immediate habeas relief due to his increased vulnerability to the COVID-19 virus. This Court granted Perez-Perez's motion for preliminary injunction in the habeas action and Perez-Perez was released from the Monroe County Jail in May 2020. *See Perez-Perez v. Adducci*, 459 F. Supp. 3d 918 (E.D. Mich. 2020). Perez-Perez's 2020 habeas petition ultimately was resolved by a stipulation between Petitioner and the government. *Perez-Perez v. Adducci*, 20-cv-10833, (E.D. Mich. Sep. 22, 2021) (Lawson, J.), ECF No. 31.

The parties' stipulated agreement placed Perez-Perez in "the Alternative to Detention program for the duration of ICE's appeal to the Board of Immigration Appeals in Mr. Perez-Perez's underlying Immigration Court case." *Id.* at PageID.1077. ICE also agreed not to re-detain Perez-Perez unless he violated the terms of his release. *Id*. The government reserved the right to re-detain Perez-Perez if it was successful in its appeal to the BIA, and Perez-Perez reserved the right to file a new habeas petition in the event he was re-detained. *Id*. at PageID.1077-78.

Perez-Perez remained free while the government's appeal to the BIA was pending. On February 21, 2025, nearly five years after the government appealed the IJ's order, the BIA vacated the IJ's cancellation of Perez-Perez's removal because the qualifying relative, Perez-Perez's youngest daughter was no longer under the age of 21, and he was therefore no longer eligible for cancellation of removal under the statute. ECF No. 1-6. Perez-Perez sought review of the BIA's final order in the Sixth Circuit. ICE re-detained Perez-Perez one day before the Sixth Circuit granted a stay of removal. *See* ECF No. 1-10.

Perez-Perez again sought habeas relief from this Court. *See Perez-Perez v. Lynch, et al.*, 25-cv-10872 (E.D. Mich. Mar. 28, 2025) (Murphy, J.). The Court denied habeas relief, finding that Perez-Perez was detained legally under 8 U.S.C. § 1226(a) in the wake of the Sixth Circuit's stay of removal. *See Perez-Perez v. Lynch*, 25-cv-10872, (E.D. Mich. Apr. 17, 2025), ECF No. 9; *see also* ECF No. 1-8. The Court determined that during Perez-Perez's detention, the authority for the detention shifted from § 1231, which calls for mandatory detention once final order of removal issued, to § 1226(a), which provides for discretionary detention pending a removal decision. *Id*. The Court reasoned that because detention was no longer

mandatory, Perez-Perez could apply for a custody-redetermination hearing under 8 C.F.R. 236.1(d) and thus denied his petition for habeas relief. *Id*.

A custody redetermination hearing was held on July 8, 2025, at which another IJ, IJ Jebson, determined that Perez-Perez failed to carry his burden of showing that he was not a danger to the community nor a flight risk. Accordingly, Perez-Perez remained in custody.

The Sixth Circuit reversed the BIA's final order of removal in a published opinion issued November 21, 2025. *Perez-Perez*, 160 F.4th 710. The Court of Appeals ruled that, as a matter of law, courts must ascertain the age of a qualifying child under 8 U.S.C. § 1229b(b)(1)(D) as of the date of the IJ's adjudication, not when the BIA decides the case on appeal. *Id*. at 714-18. Because the BIA vacated the cancellation of removal based on the age of Perez-Perez's qualifying child at the time of its decision, some five years after IJ Gorland rendered her decision to cancel removal, the Sixth Circuit remanded the case to the BIA for proceedings consistent with its decision. *Id*. at 719.  Notwithstanding the reversal of the BIA's final order, Perez-Perez remains detained.

III.    Analysis

A. Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. § 2243.

B. Statutory Basis for Petitioner's Detention

Initially, the Petitioner argued that he was being detained without any statutory authority. The Sixth Circuit had reversed the BIA's order of removal but had not remanded the case to the BIA. Perez-Perez contended that absent pending removal proceedings, 8 U.S.C. § 1226 did not authorize his detention. And the parties agreed that § 1231 did not apply after the Sixth Circuit stayed the BIA's order of removal pending its review (and certainly not after it ultimately reversed the BIA's order).

Nevertheless, while this petition was pending, the Sixth Circuit amended its judgment to remand the action to the BIA for consideration consistent with its opinion. The BIA never considered the government's

arguments on the merits of its appeal of the order cancelling removal, instead finding that Perez-Perez's daughter was no longer a qualifying child under § 1229b(b)(1), the statute which establishes the conditions for cancellation of removal. The Sixth Circuit rejected the BIA's assessment of a qualifying child's age at the time of its review, instead setting the time of the IJ decision as the correct time to ascertain the age of a qualifying child. *Perez-Perez*, 160 F.4th at 712. Presumably, with the case now remanded, the BIA will address the parties' original arguments.

In other words, this case is back to the same posture it held when the government first appealed the IJ's order cancelling removal of Perez-Perez in May 2020. The remand of the government's appeal of Perez-Perez's cancelled removal to the BIA means that the removal proceedings against Perez-Perez remain pending. Consequently, contrary to the Petitioner's argument in the initial brief in support of his petition, the government is not without statutory authority to detain Perez-Perez; as noted previously, § 1226(a) provides discretionary authority to detain a noncitizen pending removal proceedings. But this finding alone does not resolve Perez-Perez's petition.

## C. Petitioner's Continued Detention Violates 2021 Court Order

Although § 1226(e) provides that an IJ's "discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by [the agency] under this section regarding the detention of any alien or the revocation or denial of bond or parole" the subsection only bars review of the discretionary judgment of the IJ. *Garcia v. Hyde*, 2025 WL 3466312, at *5, ___ F. Supp. 3d ___ (D.R.I. Dec. 3, 2025); *see also Demore v. Kim*, 538 U.S. 510, 516-17 (2003). "It does not preclude, however, 'habeas jurisdiction over constitutional claims or questions of law.'" *Garcia* , 2025 WL 3466312, at *5 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017)).

"[C]ourts in this district have found jurisdiction in the context of a habeas petition challenging the fact of detention, including the validity of pre-removal detention." *Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020) (citing *Malam v. Adducci*, 452 F. Supp. 3d 643, 649 (E.D. Mich. 2020)). "[D]istrict courts have jurisdiction to review Immigration Judge's discretionary bond denial only where that bond denial is challenged as legally erroneous or unconstitutional." *Id*. (quoting *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 772-73 (N.D. Cal. 2019)).

Page **8** of **25**

Here, Petitioner does both. First, Perez-Perez argues that his continued pre-removal detention is legally erroneous because it defies the Court's 2021 order, based on the parties' stipulation, that Respondents would not detain Perez-Perez so long as the BIA did not overturn the IJ's cancellation of his removal and he did not violate the terms of his release. See *Perez-Perez v. Adducci*, 20-cv-10833, ECF No. 31. Although the BIA did overturn the IJ's cancellation of removal, thereby prompting the re-detention of Perez-Perez in March 2025, the Sixth Circuit vacated the BIA's order, thereby restoring the parties to the position they were in prior to the BIA overturning the cancellation of removal. Notably, Respondents agree that after the Sixth Circuit's vacation of the BIA's order and remand to the BIA, "there is no question that Petitioner's removal proceedings are ongoing" and that he thus "remains subject to pre-removal detention during those proceedings." ECF No. 8, PageID.140.

Ignoring the 2021 Court order, Respondents assert that Perez-Perez's detention is governed by pre-removal period detention statutes. It maintains that the governing pre-removal statute at the time the Sixth Circuit issued the stay of the BIA's order of removal (March 2025), § 1226(a), permits pre-removal detention under a discretionary framework,

and states, in relevant part, that: an alien may be detained or may be released on bond pending a decision on whether the alien is to be removed from the United States. 8 U.S.C. § 1226(a). Respondents argue that Petitioner received a custody redetermination hearing under § 1226(a) in July 2025, thereby satisfying Perez-Perez's statutory and due process rights.

But, as argued by Perez-Perez, his pre-removal detention was governed by the Court's 2021 stipulated order, which provided that Perez-Perez would be placed in the "Alternative to Detention program for the *duration of ICE's appeal to the [BIA] in Mr. Perez-Perez's underlying Immigration Court case*." ECF No. 9-2, PageID.183 (emphasis added). The Sixth Circuit's order vacating the BIA's order of removal and remanding the matter to the BIA signifies that ICE's appeal of the underlying Immigration Court case remains on-going. Respondents do not assert that Perez-Perez violated any condition of his release. Accordingly, Perez-Perez's ongoing detention violates the Court's 2021 order, and the IJ's order continuing detention, which also ignores the 2021 Court order, is legally erroneous. *Perez-Perez v. Adducci*, 20-cv-10833, ECF No. 31.

### D. Petitioner's Continued Detention Violates Due Process

Even absent the 2021 Court order, the July 2025 custody re-determination denying Perez-Perez bond was legally flawed and constitutionally deficient. First, IJ Jebson, who presided over the July 2025 custody re-determination, relied solely on Perez-Perez's single conviction of Operating While Intoxicated ("OWI") six years earlier in finding that he posed a danger to the community, ignoring two previous agency decisions establishing that he did not pose any risk to people or property. *See* ECF No. 1-7, PageID.76; ECF No. 9-2, PageID.189-90. In April 2020,  IJ Gorland, presiding over the evidentiary hearing on Perez-Perez's application for cancellation of removal, determined that Perez-Perez established good moral character, a designation signifying a lack of dangerousness,[2] despite his then-very-recent conviction for OWI. ECF No. 1-7, PageID.76. Additionally, as part of the stipulated order permitting

---

[2] Respondents correctly point out that the standards for finding good moral character under § 1229b and dangerousness under 8 C.F.R. § 1236.1(c)(3) are different; however, establishing good moral character is a far higher threshold than simply not posing a risk to people or property. Respondents offer no explanation for how Perez-Perez could establish good moral character if he posed a danger to the community.

Perez-Perez to remain undetained while Respondents' appeal to the BIA remained pending, Respondents determined that he qualified for the Alternative to Detention ("ATD") program. ECF No. 9-2, PageID.189-90. The ATD program was only for noncitizens "thoroughly vetted by [ICE] officers," who assessed the individual's "criminal, immigration, and supervision history, family and/or community ties, status as caregiver or provider, [and] humanitarian or medical considerations." *See* http://www.ice.gov/features/atd; *see* ECF No. 91-2, PageID.186-90. (noting that ICE determined that Perez-Perez will be placed in ATD for the duration of its appeal to the BIA). Even if IJ Jebson disagreed with IJ Gorland's conclusion, under the law of the case doctrine, courts should be "reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court." *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008). Absent cogent and compelling reasons, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice, courts should eschew revisiting prior rulings in subsequent stages of the same case. *Id*. IJ Jebson articulated no cogent or compelling reason to revisit IJ Gorland's

adjudication and identified no evidence of dangerousness that was not before IJ Gorland.

Moreover, the Court's review of IJ Jebson's Bond Memorandum dated July 21, 2025, reveals that he imposed the burden of establishing that Perez-Perez would not pose a danger to persons or property if released on the Petitioner, not the government. ECF No. 8-2, PageID.150. This Court "joins the majority of courts in finding that due process requires that the *government* bear the burden of justifying a noncitizen's § 1226(a) detention." *Soto-Medina v. Lynch*, 2026 WL 161002, at *5, ___ F. Supp. 3d ___ (W.D. Mich. Jan. 21, 2026) (collecting cases) (emphasis in the original).

Section 1226(a) "is silent as to what burden of proof applies in bond hearings and who bears that burden." *Id.* at *4 (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021)). The Supreme Court held that § 1226(a) does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings but left open the question of whether the Due Process Clause so requires. *Id.* at *5 (citing *Jennings v. Rodriguez*, 583 U.S. 281 (2018)). Although regulation requires an alien to demonstrate *upon arrest* that release would not pose a danger to property

or persons, and that the alien is likely to appear for any future proceeding, "the BIA found it reasonable to apply the standard set forth in 8 C.F.R. § 236.1(c)(8) to § 1226(a) custody redetermination hearings, placing the burden on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *Id*. (internal quotation omitted) (cleaned up).

But the Court is not bound by the BIA's decision to extend the regulatory standard of proof applied to a discretionary release by an arresting officer to one issued by an IJ after a bond hearing. *Id*. (citing 8 C.F.R. § 236.1(c)(8)). Courts need not defer to an agency interpretation of a statute. *Id*. (citing *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024)). And the BIA lacks authority to review Due Process challenges, such as this one. *Id*. (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006)).

The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025). Noncitizens, such as Petitioner, are thus entitled to its protections. *See id.* Detention pending removal is "a constitutionally valid aspect of the deportation process," but that detention must comport with due process.

*See Demore*, 538 U.S. at 523. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects*." Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). Because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action," civil detention, i.e., that without a punitive purpose, "constitutes a significant deprivation of liberty" requiring stringent due process protection. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Thus, pretrial detention, civil commitments, and other "narrow," non-penal  circumstances in which the government seeks to detain "persons who pose a danger to others or the community" require the government to prove by "clear and convincing evidence" that the person to be detained is "demonstrably dangerous to the community" and "that no conditions of release can reasonably assure the safety of the community or any person." *Id.* at 80-81; *see also United States v. Salerno*, 481 U.S. 739, 751 (1987) (holding that pretrial detention will be permitted under the Due Process Clause "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community").

Page **15** of **25**

Likewise, due process requires the government to show a noncitizen to be a flight risk by clear and convincing evidence before detaining him on that basis. *Soto-Medina*, 2026 WL 161002, at *11(citing *Velasco Lopez v. Decker*, 978 F.3d 842, 856-57 (2d Cir. 2020)).

"[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). Accordingly, courts apply the clear and convincing standard to immigration detentions as they do in several analogous heightened individual liberty contexts, such as involuntary psychiatric commitments, termination of parental rights, deportations, and denaturalizations. *See id*. at 432; *see also Hernandez-Lara*, 10 F.4th at 40 (collecting cases).

The *Mathews v. Eldridge* balancing test for the adequacy of process provided also supports the government bearing the burden of proof. 424 U.S. 319 (1976); *see United States v. Silvestre-Gregorio*, 983 F.3d 848, 852-56 (6th Cir. 2020) (applying *Mathews* balancing test in the context of immigration detention). Under *Mathews*, the Court must consider the following three factors: "(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3)

the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 785 (E.D. Mich. 2025) (citing *Mathews*, 424 U.S. at 335).

Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted). Additionally, the first factor tips further in a detainee's favor when he is "held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara*, 10 F.4th at 28 and *Velasco Lopez*, 978 F.3d at 851).

Perez-Perez is being held at the Monroe County Jail, alongside criminal inmates including pre-trial criminal arrestees and incarcerated prisoners serving criminal sentences. He is undoubtedly "experiencing the deprivations of incarceration, including loss of contact with friends and family, loss of income earning…lack of privacy, and, most fundamentally, the lack of freedom of movement." *Id*. Under these circumstances, Petitioner's liberty interest is intensified because "the deprivation of liberty that individuals detained under section 1226(a) experience is not the result

Page **17** of **25**

of a criminal adjudication." *See Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 599 (W.D.N.Y. 2025) (citing *Velasco Lopez*, 978 F.3d at 851).

The length of incarceration under Section 1226(a) affects the weighting of the first *Mathews* factor, as well. *See Soto-Medina*, 2026 WL 161002, at *7 (citing *Hernandez-Lara*, 10 F.4th at 29-30). Although removal proceedings have an end point such that the liberty interest of a noncitizen detained under § 1226(a) could be assessed as slightly less weighty than that of individuals facing indefinite and prolonged detention, in reality,"[t]he exact length of detention under [§] 1226(a) is impossible to predict, can be quite lengthy"  and "is frequently prolonged because it continues until all proceedings and appeals are concluded[,] even where an individual has prevailed and the Government appeals." *Id*. (quoting *Hernandez-Lara*, 10 F.4th at 29-30 and *Velasco Lopez*, 978 F.3d at 852) (cleaned up). Perez-Perez's experience demonstrates this actuality. IJ Gorland cancelled his removal in May 2020. Respondents timely appealed but the BIA did not issue its order overturning the cancellation until March 2025, nearly five years later. The Sixth Circuit remanded Perez-Perez's case to the BIA in February 2026. The BIA has yet to issue a briefing schedule. Perez-Perez also appealed the denial of bond to the BIA in July 2025. That appeal also

remains pending before the BIA. The Court finds that a detention for the duration of the pendency of Perez-Perez's case before the BIA, a detention that has already lasted 13 months, would almost certainly be indefinite and prolonged.

Given Perez-Perez's strong private interest in his freedom, his confinement in a jail alongside those charged and convicted with crimes despite not being accused of any crime himself, and the uncertain, already lengthy duration of that confinement, the Court agrees with a growing number of courts nationally that the first *Mathews* factor for satisfying due process favors requiring the government to bear the burden of proof for justifying continued detention. *See Soto-Medina*, 2026 WL 161002, at *7-8.

"Placing the burden on the government also satisfies the second *Mathews* factor, reducing the risk of erroneous deprivation." *Id*. at *8. The Court recognizes that Respondents have "an interest in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Id*. (quoting *Zadvydas*, 533 U.S. at 690) (internal quotation marks and alteration omitted). Yet, "the choice…is not between imprisonment and the alien living at large" but "between imprisonment and supervision under release conditions that may not be

Page **19** of **25**

violated." *Zadvydas*, 533 U.S. at 696. Generally, "proving a negative can often be more difficult than proving a cause for concern" and this is especially so for proving a lack of danger and risk of flight in a bond proceeding. *Hernandez-Lara*, 10 F. 4th at 31*; see also Elkins v. United States*, 364 U.S. 206, 218 (1960). Additionally, those facing removal have no right to counsel, will likely experience difficulty in gathering evidence on their own behalf and often face language barriers. *Id*. at 30.  "For all these reasons, a detainee often starts out behind the eight ball in a bond proceeding, and the opportunities for prejudicial error abound." *Id*. at 31;

Finally, under the third *Mathews* factor, as the Court recognizes, the "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings." *Hernandez*, 872 F.3d at 990. Nevertheless, any detention must "bear a reasonable relation to its purpose." *Id*. (quoting *Zadvydas*, 533 U.S. at 690) (cleaned up). As the Second Circuit aptly observed:

> [T]he Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight. On the contrary, shifting the burden of proof to the Government to justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose .... When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged

> periods of time, as in this case, it separates families and removes from the community breadwinners, caregivers, parents, siblings and employees. The Government articulates no public interest that any of this serves and we see none.

*Velasco Lopez*, 978 F.3d at 854–55. In short, the risk of placing the burden of proof on the detainee risks many instances of needless detention, "entailing substantial social and financial costs." *Hernandez-Lara*, 10 F.4th at 33. These costs far outstrip the additional costs of imposing the burden of proof of detainee's risk of danger and flight on the government. *See Soto-Medina*, 2026 WL 161002, at *9 (collecting cases).

In sum, and as "a majority of federal courts, including both trial and appellate courts, have" decided, "the *Mathews* factors establish that due process requires the government to bear the burden of demonstrating that Petitioner is a flight risk or danger to the community to deny bond." *Id*. (citing *Miranda v. Garland*, 34 F.4th 338, 378 (4th Cir. 2022) (Urbanski, J., concurring part)).

### E. Respondents' Remaining Arguments

The Court rejects Respondents' argument that the Court's April 2025 denial of Perez-Perez's earlier habeas petition governs here. That rejection hinged on the fact that Petitioner had yet to request or receive a bond hearing, which could result in his release – the relief he sought from the

Court. Perez-Perez received a bond redetermination hearing after the 2025

Court denied his petition, but, as discussed at length above, that hearing

failed to provide Perez-Perez due process because it imposed the burden

of proof relating to risk of danger to community and of flight on him, rather

than on Respondents. The Court's denial of habeas relief based on the

availability of an administrative hearing cannot possibly apply to a petition

filed after and, at least in part, based on that subsequent hearing.

The Court also rejects Repondents' argument that the Petitioner is

now being held under § 1225, and thus subject to mandatory detention.

This Court, along with the majority of district courts nationwide, has roundly

rejected and continues to disavow the application of § 1225 to the removal

of long-present noncitizens, such as Perez-Perez. *See, e.g., Alvarez-Lopez

v. Dep't of Homeland Security*, 2025 WL 3525956 (E.D. Mich. Dec. 9,

2025) (collecting cases).

Finally, the Court is not persuaded by Respondents' argument that

Perez-Perez's petition is premature because the appeal of his bond denial

remains pending before the BIA. No applicable statute or rule requires

administrative exhaustion here. *See Lopez-Campos*, 797 F. Supp. 3d at

778. When Congress has not mandated exhaustion, the decision to require

it is within the sound discretion of the court. *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). Known as prudential exhaustion, the court-made doctrine "must comport with the statutory scheme and congressional intent." *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019) and *Shearson*, 725 F.3d at 593-94).

> Courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos*, 797 F. Supp. 3d at 778. Here, all three factors weigh against requiring exhaustion. But, even if prudential exhaustion would otherwise apply, courts may waive such exhaustion if the "pursuit of administrative remedies would be a futile gesture" or if the petition presents a "legal question…fit for resolution and delay means hardship." *Shearson*, 725 F.3d at 594; *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S.

Page **23** of **25**

1, 13 (2000). The BIA appeal of the bond denial here would be futile because the BIA lacks authority to review a due process claim. *See Sterkaj,* 439 F.3d at 279. Moreover, Perez-Perez has already been detained for over eight months without a BIA decision. Waiver is undeniably appropriate because depriving Perez-Perez his liberty "while awaiting [the] BIA appeal decision certainly equates to hardship." *Lopez-Campos*, 797 F. Supp. 3d at 779.

Accordingly, the Petitioner's pending appeal of his bond denial before the BIA does not preclude the Court's immediate consideration of his habeas petition.

## IV.   Conclusion

For all of these reasons, the Court **GRANTS** Perez-Perez's petition and **ORDERS** Respondents to release Perez-Perez **by April 28, 2026**, subject to the release conditions in effect before his re-detention in March 2025 and the other terms set forth in the parties' stipulation incorporated into the Court's 2021 Order.

The Court further **ORDERS** Respondents to file a status report **by April 30, 2026** to certify compliance with this order. The status report shall detail when Perez-Perez was released.

**IT IS SO ORDERED.**

s/ Shalina D. Kumar
SHALINA D. KUMAR
Dated: April 24, 2026                                United States District Judge